UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **FRANKENMUTH MUTUAL INSURANCE COMPANY,** | }<br>}<br>} |
| **Plaintiff,** | }<br>} |
| **v.** | } **Case No.: 7:21-cv-00945-RDP**<br>}<br>} |
| **IVAN'S PAINTING, LLC *et al*.,** | }<br>}<br>} |
| **Defendants.** | } |

## MEMORANDUM OPINION

This matter is before the court on the Parties' several motions for summary judgment. (Docs. # 62, 64, 65, 68). These Motions have been fully briefed. (Docs. # 66, 69, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80). After careful review, and for the reasons discussed below, Frankenmuth is entitled to a declaratory judgment that it does not owe coverage nor does it owe indemnification to any party in this suit.

**I.     Factual Background**[1]

TCC, Inc. was the general contractor for the construction of a new home in Tuscaloosa County. (Docs. # 1 at 10; 11 at 6). Ivan's Painting entered into a subcontract with TCC to paint and clean window units. (Doc. # 1 at 10). The subcontract required Ivan's Painting to purchase an insurance policy that named TCC as an additional insured. (Doc. # 32 at 2). Ivan's Painting

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

provided TCC with a certificate of insurance that identified Frankenmuth Mutual Insurance Company ("Frankenmuth") as the insurer and verified that TCC was named as an additional insured. (*Id.* at 4).

Ivan's Painting allegedly damaged eighty-seven windows at the new construction site. (Docs. # 1 at 10; 32 at 7). The homeowners demanded that TCC replace the damaged windows. (*Id.*). As a result, TCC and Ivan's Painting presented a claim to Frankenmuth for the cost of replacing the damaged window units. (Doc. # 1 at 11). Frankenmuth responded to the claims by indicating that TCC may qualify as an additional insured under the policy. However, it "effectively denied coverage." (Doc. # 32 at 7).

Frankenmuth filed this declaratory judgment action asking the court to declare that its policy does not provide coverage to either Ivan's Painting or TCC for "loss from or related to the damage to the window units." (Doc. # 1 at 15). TCC filed an answer that contained counter- and crossclaims, alleging two breach of contract claims against Ivan's Painting, a negligence claim against Ivan's Painting, a declaratory judgement claim against Frankenmuth, and a breach of contract claim against Frankenmuth. (Doc. # 11 at 12-15).

On November 3, 2021, the court denied (1) Frankenmuth's motion to strike TCC's declaratory judgment counterclaim and (2) its motion to dismiss TCC's breach of contract counterclaim against Frankenmuth. (Docs. # 29, 30). Nonetheless, the court recognized that TCC's Crossclaim and Counterclaim Complaint was a shotgun pleading. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015). (Doc. # 29). Accordingly, the court ordered TCC to file an amended complaint. (Doc. # 30). TCC filed an amended pleading on November 17, 2021. (Doc. # 32). TCC's Amended Crossclaim and Counterclaim Complaint asserts the same causes of action against Ivan's Painting and Frankenmuth. (Doc. # 32).

On that same date, November 17, 2021, Owners Insurance Company ("Owners") filed a motion to intervene. (Doc. # 31). Owners asserted that it was entitled to intervene as a matter of right (or, at least, to do so permissively) and that its intervention in the action will not destroy subject-matter jurisdiction. (*Id.*). The court agreed and permitted intervention under Rule 24(b), finding supplemental jurisdiction existed under § 1367. (Doc. # 32).

On March 10, 2022, Owners filed an intervenor complaint. (Doc. # 55). In it, Owners asserted three crossclaims against Ivan's Painting and two counterclaims against Frankenmuth. (*Id*. at 11-16). Count One seeks a declaratory judgment that the Ivan's Painting Frankenmuth Policy affords "additional insured" coverage to TCC for the claim. (*Id*. at 11-12). Count Two seeks equitable contribution and/or subrogation from Frankenmuth in the amount of $177,057.02 that it paid to settle the claim on TCC's behalf. (*Id*. at 12-13). Count Three is a breach of contract claim against Ivan's Painting alleging that Ivan's failed to indemnify TCC as required by the subcontract. (*Id*. at 14). Count Four is a breach of contract claim against Ivan's Painting alleging that, to the extent there is no coverage under the Frankenmuth Policy for the claim, Ivan's failed to procure sufficient insurance to satisfy its obligations under the subcontract. (*Id*. ¶ 65). Finally, Count Five is a negligence claim against Ivan's, in which Owners asserts that it is entitled to the sum it paid on TCC's behalf for negligent workmanship. (*Id*. at 15-16).

All named parties have now filed motions for summary judgment. Owners and TCC filed a joint motion seeking a declaration that TCC is entitled to additional insured coverage under the Frankenmuth policy and that TCC is entitled to indemnification from Ivan's Painting. (Doc. # 66 at 16). Frankenmuth filed two summary judgment motions; one as to Owners and one as to Ivan's (Docs. # 64, 65). In the former, Frankenmuth seeks a declaration that the Frankenmuth policy provides no coverage for TCC and thus Owners cannot recover for any amounts it may have paid.

(Doc. # 64 at 28). In the latter, Frankenmuth seeks a "determination that it does not owe defense or indemnity as a matter of law to Ivan's Painting, LLC for the lawsuit brought against it by Owners Insurance Company as the subrogee of TCC, Inc." (Doc. # 65 at 1). Finally, Ivan's filed a summary judgment seeking a declaration that Frankenmuth is obligated to indemnify it against the claims of TCC and/or Owners (Doc. # 68).

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and, by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*See id*. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e*., facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial. (*Id*. at 1115-16).

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. (*Id*.). Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. (*Id*.). The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. (*Id*. at 1115). This method requires more than a statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. (*See id.* at 1115-16).

### III.    Analysis

There has been an enormous amount of briefing in this case. In light of that briefing, the court has sequenced its approach to ruling on the parties' motions as follows. First, the court must address any standing issues this case presents. Next, it must decide whether the damage to the glass is covered under Ivan's Comprehensive General Liability ("CGL") Policy with Frankenmuth. This second step will require the court to determine whether (1) there was an "occurrence" under the policy definition; and, if so, (2) whether any exclusions listed in the policy apply. Finally, the court must determine which parties, if any, are indemnified under the Frankenmuth policy and any other agreements at issue. The court considers each of these questions in turn.

#### A.    Owners Does Not Have Standing to Bring a Declaratory Judgment Action.

"In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege … a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Gr.*, 193 F. 3d 1342, 1346 (11th Cir. 1999) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991)). "Thus, in order for this Court to have jurisdiction to issue a declaratory judgment … [a plaintiff] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." (*Id.*).

In addition to alleging the likelihood future injury will occur, a party seeking declaratory relief must also demonstrate that a declaratory judgment would completely resolve the case. As courts in this circuit have stated,

> To satisfy Article III's requirements, moreover, the requested declaratory judgment must "redress [an] alleged harm"—or, put another way, "completely resolve [the] case." *Sundy v. Friendship Pavilion Acquisition Co., LLC*, 807 F. App'x 977, 982-83 (11th Cir. 2020). If the judgment would "only resolve a collateral issue," such

that the plaintiff "would still have to return to state court, where he might (or might not) be able to use the declaratory judgment in support of a new suit seeking monetary damages," then the plaintiff lacks Article III standing. *Id.*

*Sully v. Scottsdale Ins. Co.*, 533 F. Supp. 3d 1242, 1246 (S.D. Fla. 2021). At minimum, then, a party seeking declaratory relief must (1) allege a substantial likelihood that he will suffer injury in the future, and (2) demonstrate that a declaratory judgment would resolve the case entirely.

Here, Owners has not made either showing. Owners "seeks a declaration that the Frankenmuth Policy affords additional insured coverage to TCC for the claim." (Doc. # 55 ¶ 46). Owners seeks that declaration in the hopes of remedying a past injury – namely, the allegedly unjust denial of coverage to TCC and to Owners as an additional insured. In Count One of its Complaint, Owners does not even broach the subject of future injury, and the court cannot identify a plausible future injury that is "substantially likely" to come to Owners if a declaratory judgment is not granted. Indeed, a declaratory judgment in Owners' favor would "only resolve a collateral issue," requiring Owners to return to state court to litigate its claims seeking monetary damages. *Sully*, 533 F. Supp. 3d at 1246.[2] Because Owners has not alleged a substantial likelihood of future injury and because declaratory relief would resolve only a collateral issue in the case, it does not have standing to seek a declaratory judgment.

### B. Ivan's Scratching of the Glass Is Not an "Occurrence" and Is Therefore Not Covered Under the CGL.

"Alabama law generally imposes the burden of proof on policy coverage issues on the insured, while the burden of proving applicability of a policy exclusion rests with the insurer." *See Pa. Nat. Mut. Ins. Co. v. Roberts Bros., Inc.*, 550 F. Supp. 2d 1295, 1303 (S.D. Ala. 2008). Moreover, whether there has been an "occurrence" is a legal question to be answered by the court.

---

[2] The issue of whether Owners is owed coverage as an additional insured is collateral to the principal issues of whether there was an occurrence under the policy and whether any exceptions to coverage apply. If Owners obtained its desired relief, these questions would remain and still would have to be litigated.

*See id.* at 1303-04 (citing *B.D.B v. State Farm Mut. Auto. Ins. Co.*, 814 So. 2d 877, 879 (Ala. Civ. App. 2001) ("The interpretation of an insurance contract presents a question of law")).

The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. # 1-1 at 39). The Alabama Supreme Court defines an "accident" as an "unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005) (quoting BLACK'S LAW DICTIONARY 15 (7th ed. 1999)). "When a contractor performs faulty work … there is no accident or occurrence, but, when the contractor's faulty work creates a condition that in turn damages property, under Alabama law, that damage results from an accident." *Penn. Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Par.*, 790 F. 3d 1173, 1180 (11th Cir. 2015) (citing *Owners Ins. Co. v. Jim Carr Homebuilder, LLC*, 157 So.3d 148, 155-56 (Ala. 2014)).

Frankenmuth argues that its policy does not afford coverage for the damaged glass because "the only damage in this case is to the insured's work, with no resulting damage." (Doc. # 72 at 20). As a result, it contends "no occurrence has taken place and [Frankenmuth] is entitled to summary judgment." (*Id.*). Owners and TCC respond by asserting that the damage at issue is the scratched glass and Ivan's work was limited to the adjacent frames. (Doc. # 66 at 17). Thus, Owners and TCC argue, there is an occurrence under Alabama law because "[t]he claim does not simply seek to redo or repair Ivan's Painting's faulty painting or staining work, which would not be an occurrence." (*Id.*). For its part, Ivan's suggests that the windowpanes were damaged "during the sanding process to get the wooden frames to the tone desired by TCC and/or owners of the home." (Doc. # 69 at 12). Accordingly, because the damage done was *not* to Ivan's work, but

instead to the material surrounding its work, Ivan's asserts that the damage was the result of an accident and therefore an occurrence under Alabama law. (*Id.*).

"Insurance contracts are to be enforced as they are written, as long as there is no ambiguity in the provisions involved." *Progressive Specialty Ins. Co. v. Naramore*, 950 So. 2d 1138, 1141 (Ala. 2006) (quoting *Watkins v U.S. Fid. & Guar. Co.*, 656 So. 2d 337, 339 (Ala. 1994)) (internal citations omitted). "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Roberts Bros.*, 550 F. Supp. 2d at 1304 (quoting *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala.2005)). However, "ambiguities cannot be constructed from thin air by 'strained or twisted reasoning' in interpreting the language." *Id.* (quoting *Safeway*, 912 So. 2d at 1143).

Here, there are several instructive cases related to whether there has been an occurrence. In 2011, the Alabama Supreme Court decided *Town & Country Property LLC v. Amerisure Ins. Co.*, 111 So. 3d 699 (Ala. 2011). That case concerned the allegedly faulty construction of an automobile dealership that resulted in significant damage to the structure and other tangible property caused by water intrusion. The primary issue in *Town & Country* was whether defective construction could result in an occurrence that is covered under a CGL policy. The court held that "faulty workmanship itself is not an occurrence but that faulty workmanship may lead to an occurrence if it subjects personal property or other parts of the structure to 'continuous or repeated exposure' to some other 'general harmful condition.'" *Town & Country*, 111 So. 3d at 706 (citing *Moss v. Champion Ins. Co.*, 442 So. 2d 26 (Ala. 1983)).

In 2012, Magistrate Judge Greene of this court decided *Nationwide Mutual Fire Insurance Company v. Sellers*, No. 2:11-cv-2581-PWG, 2012 WL 13026749 (N.D. Ala. Aug. 6, 2012). Just as in *Town & Country*, *Sellers* concerned water damage allegedly due to construction defects. This

water damage appeared to be the result of a poorly constructed foundation. *Id.* at *3. Magistrate Judge Greene cited *Town & Country*, noting that faulty workmanship itself could not constitute an occurrence. *Id.* at *8. He concluded that "faulty workmanship resulted in conditions that led to cracking and damage to other parts of the structure that the insured undisputedly did not construct. Those circumstances would amount to an 'occurrence' within the meaning of the Policy under Alabama law." *Id.* at *9.

Perhaps most on-point is the Alabama Supreme Court's decision in *Owners Ins. Co. v. Jim Carr Homebuilder, LLC* in 2014. 157 So. 3d 148 (Ala. 2014). Like the other cases discussed, *Jim Carr Homebuilder* concerned water damage due to faulty construction by a subcontractor. There, the court confirmed that "faulty workmanship itself is not an occurrence." *Id.* at 153-54 (citing *U.S. Fid. & Guar. Co. v. Warwick Dev. Co.*, 446 So. 2d 1021 (Ala. 1984)). But, the court also concluded that the damage caused by faulty workmanship and resulting in water damage to tangible property was an "occurrence" covered under the CGL policy. *Id.* at 155-56.

Owners argues that *Town & Country* is analogous to the present case. Because the damage is to the scratched glass and not to the adjacent frames on which Ivan's was working, Owners asserts that the damage to the glass is more akin to the water damage in *Town & Country*, *Sellers*, and *Jim Carr Homebuilder* than to the faulty construction itself. (Doc. # 66 at 19). The court disagrees. Even accepting Owners' and Ivan's factual assertions as true, here, damage did not result from repeated exposure to a condition caused by faulty work, *after* the work had been completed. Rather, Ivan's damaged the glass *while* performing work on adjacent frames.

The parties disagree on how the court should interpret the policy's definition of "occurrence." Frankenmuth asks that the court broadly construe this provision, arguing that the only damage alleged is to the windows and doors on which Ivan's worked, thus precluding the

finding of an occurrence. (Doc. # 72 at 20). Ivan's and Owners, meanwhile, seek a narrow reading of the provision. They argue that, because the damage to the glass likely occurred while Ivan's worked on the frames adjacent to the glass rather than while Ivan's worked on the glass itself, the damage to the glass is an "accident" within the definition of the provision. (Doc. # 69 at 12; 66 at 16-18).

Absent ambiguity, the court must interpret a contract provision as it is written. *Progressive Specialty*, 950 So. 2d at 1141. Here, the case law and policy language paint a clear and unambiguous picture. The cases referenced above all present a similar fact pattern — faulty construction leading to damage (principally from water intrusion) over time. These decisions make clear that faulty workmanship leading to continuous or repeated exposure to a harmful condition can constitute an occurrence. To be sure, a poorly constructed roof or foundation leading to continuous or repeated water intrusion resulting in damage is properly defined as an occurrence. It does not, however, follow that all "faulty work that damages otherwise non-defective work is property damage caused by an occurrence," as Owners suggests. (Doc. # 66 at 20).

In *Jim Carr Homebuilder*, the court noted that if it found that water damage arising out of faulty construction is not an occurrence, "coverage for accidents resulting from some generally harmful condition would be illusory. There would be no portion of the project that, if damaged as a result of exposure to such a condition arising out of faulty workmanship of the insured, would be covered under the policy." *Jim Carr Homebuilder*, 157 So. 3d at 155. Here, just the opposite is true. If the court found that the damage to the glass *was* an occurrence because it occurred while Ivan's worked on the adjacent frames and therefore constituted an "unforeseeable" accident, any *limitation* on what constitutes an occurrence would be illusory. (Doc. # 69 at 12). Damage to the tangible property immediately adjacent to the property on which Ivan's was working was

11

foreseeable, and thus it should be reasonably anticipated. *See Hartford Cas.* 928 So. 2d at 1011. Indeed, Ivan's *did* anticipate as much when it put a protective liquid masking on the glass before the work commenced. (Doc. # 63-6 at 50). Therefore, this damage cannot be considered an "accident" under Alabama law and consequently it does not fall within the definition of occurrence under the policy.

Because the damage to the glass cannot be considered an occurrence under the Frankenmuth Policy, Frankenmuth is entitled to a declaration that the Policy provides no coverage to any party for the loss. Therefore, it is unnecessary to examine whether any coverage exceptions would apply.

### C. Frankenmuth is Not Required to Indemnify Ivan's Against Owner's Breach of Contract and Negligence Claims

Frankenmuth also seeks a declaration that it is not required to indemnify Ivan's against Owners' breach of contract and negligence claims. There is little Alabama law on the question of whether a breach of contract claim is covered under a CGL policy. Frankenmuth relies on *AutoOwners Ins. Co. v. Toole* to support its contention that a CGL does not cover a breach of contract claim. 947 F. Supp. 1557 (M.D. Ala. 1996). Although Frankenmuth overstates the court's holding in *Toole*, the case nevertheless is instructive, and, for different reasons than Frankenmuth argues, the court agrees that it is not required to indemnify Ivan's as to Owners' breach of contract claims.

The court in *Toole* recognized that there was limited Alabama law "addressing if and when events giving rise to a contract dispute fall within the standard definition of occurrence." *Toole*, 947 F. Supp. at 1563. Contrary to Frankenmuth's suggestion, the *Toole* court "decline[d] to adopt any broad holding that claims sounding in contract are not occurrences." *Id*. at 1564. Instead, the court echoed the Vermont Supreme Court's case-specific analysis, holding that "in determining

whether there is coverage, the court should look to the specific 'kind of … claim' being asserted … and the 'purpose of the general liability policy' from which coverage is sought." *Id.* (quoting *City of Burlington v. Nat'l. Union Fire Ins. Co.*, 655 A.2d 719, 722 (Vt. 1994).

Still, while Alabama courts that have decided similar issues have refrained from establishing a bright line rule, most have found that a breach of contract does not constitute an "occurrence" under a typical CGL policy, and thus that an insurer is not required to indemnify an insured against such a claim. *See Toole*, 947 F.Supp. at 1564; *Penn. Nat. Mut. Cas. Ins. Co. v. Snider*, 996 F.Supp.2d 1173 (M.D. Ala. 2014); *Reliance Ins. Co. v. Gary C. Wyatt, Inc.*, 540 So. 2d 688 (Ala. 1988); *Employers Mut. Cas. Co. v. Smith Const. & Dev., LLC*, 949 F.Supp.2d 1159 (N.D. Ala. 2013). This court reaches a similar conclusion. As the Alabama Supreme Court stated in *Reliance*, "no coverage exists for … breach of contract, because the breach did not constitute an 'occurrence' that resulted in bodily injury or property damage under the definitions within the policy, which was necessary to bring such claim within the policy coverage." *Reliance*, 540 So. 2d at 691.

Finally, Frankenmuth cannot be required to indemnify Ivan's on Owners' negligence claims because, as has already been determined, there was simply no occurrence triggering coverage. Requiring Frankenmuth to indemnify Ivan's against Owners' negligence claim would be little more than a back-door pathway to coverage under the CGL policy. As such, Frankenmuth is entitled to a declaration that it is not required to indemnify Ivan's against Owners' breach of contract or negligence claims.

**IV. Conclusion**

For the reasons provided above, Frankenmuth is entitled to a declaratory judgment that (1) it does not owe coverage to any party for the damage Ivan's caused to the glass; and (2) it is not

required to indemnify any party regarding any claims arising from Ivan's damage to the glass. A separate order reflecting this memorandum opinion will be filed concurrently.

      **DONE** and **ORDERED** this December 19, 2022.

                                       _____
                                       **R. DAVID PROCTOR**
                                       UNITED STATES DISTRICT JUDGE